IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

REGINA LEWIS
21 Kenney Ct.
Newburgh, NY 12550

       Petitioner,

Against-

VALENTINA DITOMASSO
111 Broadway
Newburgh NY 12550

INDEPENDENT LIVING INC.,
5 Washington Terrace
Newburgh NY 12550

SAFE HARBORS OF THE HUDSON
INDEPENDENT LIVING INC.,
111 Broadway
Newburgh, NY 12550

ORANGE COUNTY DEPARTMENT
OF SOCIAL SERVICE
141 Broadway
Newburgh NY 12550

       Defendant's,

Complaint

Section 504 of the Rehabilitation Act of 1973

29 U.S.C. §794

42 U.S.C. § 1983



---

1. Comes now, petitioner, Regina Lewis, who files this complaint for the discriminating based on my disability, and for failing to provide a reasonable accommodation pursuant to 42 U.S.C. §3602(b) and for retaliation over our involvement in a prior and current civil dispute. Petitioner is an American with a Disability and prays, for a reasonable accommodation as per 42 U.S.C. §3602(b), the American with Disabilities Act and the Rehabilitation Act of 1973, is a federal law, codified as 29 U.S.C. § 701 et seq. The principal sponsor of the bill was Rep. John Brademas. The Rehabilitation Act of 1973 replaces the Vocational Rehabilitation Act of 1973, to extend and revise the authorization

of grants to States for vocational rehabilitation services, with special emphasis on services to those with the most severe disabilities, to expand special Federal responsibilities and research and training programs with respect to individuals with disabilities, to establish special responsibilities in the Secretary of Health, Education, and Welfare for coordination of all programs with respect to individuals with disabilities within the Department of Health, Education, and Welfare, and for other purposes.

2. On November 7, 2019, I received notice from defendant DiTomasso, advising me that, the Supporting Housing Program will be discharging me from their program as of December 15,2019, see (EXHIBIT-A). The correspondence was also sent to Shannon Zawaski, Chief Operating Officer, Orange County Department of Mental Health SPOA Coordination, Glady's White Property Manager Bourne and Kenney Redevelopment LLC, Yeda Parker, DFA Department of Social Services. Also enclosed was a copy of the Independent Living, Inc. Consumer's Rights and Responsibilities, See (EXHIBIT-B). Firstly, by sending copies of my confidential information to anyone violated my confidential privacy under HIPAA.

- Line (1), You have the right to be treated with dignity, respect and integrity,
- Line (2), You have the right to be treated in a courteous and friendly manner,
- Line (3), you have the right oy have your information kept confidential based on HIPAA Regulations, Notice of Privacy Practices, and rules of confidentiality
- Line (4), You have the right to have your information shared with another person, agency or organization *ONLY* when your written permission has been provided in the form of a current signed Individual Authorization (Consent for Release of Information) and/or based on the informed consent as stated in our Notice of Privacy Practices,
- (5), you have the right to receive accurate and easy to understand information… and in another language or format, if needed,
- (6), you have the right to have your services, at Independent Living, Inc., be addressed by a staff member within five (5) business days from receipt of the request,

- (7), You have the right to initiate a consumer grievance procedure if you feel any action, occurrence or attitude is unfair or inequitable in the delivery of services.

3. So why did defendant DiTomasso as the program manager for housing and homeless services never provide me with accurate and easy to understand information and disclose my information with:
   - Shannon Zawaski, Chief Operating Officer of Independent Living, 5 Washington Terrace Newburgh NY 12550
   - Orange County Department of Mental Health, SPOA Coordination, 30 Harriman Drive, Goshen, NY 10924
   - Glady's White, Property Manager Bourne and Kenney Redevelopment, LLC, 150 Smith Street Newburgh NY 12550
   - Yeda Parker, DFA Department of Social Services 141 Broadway Newburgh NY 12550

4. Secondly, under no circumstances can I summarily discharged from the Supportive Housing Program because fundamental due process rights and due process protections are involved. This is a material issue in dispute precluding summary judgment.

5. Surely, line 4, of the Consumer Rights and Responsibilities is as clear as day, in so far as it states, that
   - I have the right to have my information shared with another person, agency or organization *ONLY* when my written permission has been provided in the form of a current signed Individual Authorization (Consent for Release of Information) and/or based on the informed consent as stated in our Notice of Privacy Practices.

6. I did not know of the defendant's discussions or intentions so therefore, I did not sign a current Individual Authorization (Consent for Release of Information, to provide any information about me to anyone and therefore, the defendant Valentina DiTomasso violated my rights and HIPAA.

3

7. According to defendant DiTomasso, in her correspondence she states in the second paragraph, "there have been numerous discussions with the case management staff and herself regarding my continuous barrage of discriminatory and vulgar messages left on our phones and our voicemails. "You have reiterated your lack of faith for the staff of this agency, your lack of faith in working with us, and you do not believe that we have the ability to suit your needs." "We believe that your physical and mental wellbeing are of paramount importance, therefore; we agree that discontinuing our services and allowing you to find assistance with an agency that is better suited to meet your needs are the best course of action." This is not only an oxymoron but it's stupid coming from the mouth of a housing case manager of a program whose primary services are to aid people with serious mental health disabilities.

8. In the third paragraph, defendant DiTomasso, states, "in addition, as per our conversation via telephone on November 4,2019, you have expressed that you no longer desire to continue to live in Newburgh and want to be housed in another county." "You believe that being out of county would allow you the opportunity to expand your horizons and allot you opportunities that Orange County has not been able to meet." This is true, but again, discharge planning is a prerequisite to achieving this goal.

9. The defendant Valentina DiTomasso admits that "there have been numerous discussions with the case management staff and herself regarding my continuous barrage of discriminatory and vulgar messages left on their phones and on their voicemails, this is proof that the defendant DiTomasso never mentioned it to me, yet according to policy . I have the right to receive accurate and easy to understand information... and in another language or format, if needed.

10. Since defendant Valentia DiTomasso clearly recognizes that my physical and mental wellbeing are of paramount importance, why would she and the case management staff agree in my absence that discontinuing my services and allowing me to find assistance with an agency that is better suited to meet my needs by myself was the best course of action." It's obvious that my lack of faith for the staff of the agency, and my lack of faith in working

with the defendant and my belief that the agency has not meant my needs is obvious by the lack of transparency and communication directly with me.

11. This all stems from August 1,2012, when the Bourne & Kenney Redevelopment refused my rent. My rent is paid directly to my landlord, or so I thought. In July 2018, on or around the thirty first, I singed a shelter verification form and provided DSS with a landlord statement.  I had no idea, that my Public Assistance grant from DSS for my shelter was being paid to Independent Living. Therefore, I had no idea that my rent was in the arrears for the months of August 1, 2019 through September 2019, because Bourne & Kenney had been refusing my rent.  Had my PA grant been paid directly to Bourne & Kenney, and Bourne &Kenney returned the check to DSS, I would have been immediately notified by DSS of changes to my PA Grant. Neither, DSS, nor Independent Living or the Bourne & Kenney or the defendant Valentina DiTomasso ever notified me that Bourne & Kenney had refused my rent.

12. My shelter verification and landlord statement are verification that I have only authorized DSS to make payment to the Bourne & Kenney Redevelopment. I did not authorize nor is it legal for DSS to pay Independent Living.  Independent Living is not my landlord and not the property manager. The defendants were certainly required to notify me of the landlord's refusal to accept rent any longer and of impending eviction proceedings, since the defendants are all "case managers."

13. In August of 2019, I text to my case manager and spoke to defendant DiTomasso regarding the status of my apartment, DiTomasso confirmed that everything was ok. Clearly this was a blatant lie and the defendants deliberately concealed this fact from me intentionally.

14. I Finally, received notice of impending eviction proceedings from Bourne & Kenney on September 13,2019, in the mail so obviously, I was misinformed by the defendants DiTomasso and Independent Living, who had known since August 1,2019, of impending eviction proceedings, and that I was in danger of losing my home and becoming displaced in the dead of winter with physical and mental wellbeing issues of paramount importance.

According to the policy of Independent Living, I have the right [emphasis added] to receive accurate and easy to understand information.

15. The defendant Valentina DiTomasso never discussed discharge planning prior to this letter, nor any issues of my messages, that I only left intending to get clarity of my housing status, after I finally received notice from Bourne & Kenney of impending eviction proceedings. Discharge planning would include prior discussion of transfer of services, not termination, and relocation and transfer of Public Assistance benefits at the behest of me and not the defendants. The manner in which I am being treated is not in compliance with the policy that gives me the right to be treated with dignity, respect and integrity, and the right to be treated in a courteous and friendly manner, and this is not a reasonable accommodation; nor suiting my needs. Meaningful notice and mitigation of conflict and issues is a prerequisite.

16. On September 8,2019, during the preliminary investigation in the eviction proceedings, it was discovered that DSS had never paid one cent to Bourne & Kenney. Apparently, DSS paid the defendant Independent Living Inc. Three-Hundred Dollars a month since July 31,2018. Independent Living is not my landlord, and I signed a shelter verification form and landlord statement with DSS to pay the Bourne & Kenney Redevelopment, three hundred dollars monthly for my shelter.

17. This is fraud and the Department of Social Service and Independent Living knew that Independent Living was not entitled to money from DSS in my name. The defendants also committed fraud by misinforming me of the need to apply for social services in the first place in order to qualify for the S.P.O.A. Program, see (EXHIBIT-C). The correspondence form defendant Valentina DiTomasso to Bourne & Kenney Apartments dated July 25,2018, is clearly advising the landlord that Independent Living will provide the rent totaling $997.00 on a monthly basis until Regina Lewis secures her own benefits.

18. In a prior civil proceeding against Independent Living, for the repayment of money because three hundred dollars is not a correct subsidized portion of my $412.00 PA grant from Social services. The defendant Valentina DiTamasso advised the court that Public

assistance from Social Services did not qualify as an income subsidized under S. P. O. A. and therefore could not be subsidized and I had to pay a flat rate of three hundred dollars. This was a lie because as a consumer, of Independent Living the defendant Independent Living is responsible for subsidizing 30% of my income. Therefore, the fact that I am paying three hundred dollars a month out of my four hundred twelve dollar public assistance grant is proof that my income is clearly not being subsidized and the fact that Independent Living Inc. is making three hundred dollars a month from me is theft and fraud.

19. Since July 2018, I have been asking DSS and Independent Living if social service doesn't qualify as an income subsidized under S. P. O. A. then why do I need it when Independent Living has already agreed to pay my full rent.  I even had a providers meeting with DSS and Independent Living and my therapist. The question was left unanswered. When I threatened to close my entire Public Assistance case with DSS, the defendants threated me with eviction if I didn't allow them to continue to handle my case in this manner.

20.  It goes without saying that I cannot be summarily discharged from Independent Living because I am disabled, which the defendant clearly recognizes, and I am entitled to a reasonable accommodation and discharge planning is a prerequisite. Telling me when I am presumed to have mental and physical well-being issues that you are discontinuing my services and forcing me to find assistance with another agency that may be better suited to meet my needs is the best course of action, in the dead of winter, proves my point, that the defendants Valentina DiTomasso and Independent Living are violating protocol and policy and discriminating based on my disability in retaliation.  This is no more than an attempt to discharge me from the S.P.O.A. program to hide the fraud between DSS, Independent Living and S.P.O.A. This is also to hide the fact that Independent Living is also discriminating by refusing to provide case management services in compliance with HARP or HCBS.

21. In 2018, I was approved for HARP, a Health and Recovery Plan or HCBS launched by my insurance carrier Affinity Health Plan. Independent Living is the designated case management and community coordinator for HARP and HCBS. Independent Living

discontinued my services and continues to ignore my right to a reasonable accommodation in the face of statutory policy and federal laws that forbid discrimination of any program, by termination and denial of a reasonable accommodation. Therefore, this is a pattern of the process of elimination for damage control and, the reality is that the defendants are attempting to drop me from the S.P.O.A. program.

22. Independent Living does not or manage control S.P.O.A. Independent Living only provides case management services. As per statute I would have to be notified by the Orange County Department of Mental Health, SPOA Coordination, 30 Harriman Drive, Goshen, NY 10924, which I have not, and due process is statutory and strictly enforced.

23. Defendant Valentina DiTomasso has no authority to make an executive decision over S.P.O.A. or Independent Living, she is a case manager and her job is to manage my case with Independent Living which she has demonstrated in her own words that she cannot do.

24. The Enriched Health eligibility for HARP or HCBS is based on a member's history of using certain services. Clearly, since I have been enrolled in the HARP program since 2018 after a proper community health assessment based on my history of using certain services, I meet the criteria. Based on the 2016 handbook, individuals are qualified based on their history of use and their current needs. This means that membership is not based on Consumer Rights and Responsibilities, of Independent Living but rather the fact that I have used certain services and been assessed by a community case manager at Independent Living. So whatever policy Independent Living has written, it does not supersede the statutory language or the letter of the law that prohibits disabled people from being summarily denied services or discharged from any qualifying program. What the defendants may not do is retaliate or deny my entitlement to the full benefit and enjoyment of either the HARP or S.P.O.A. programs.

WHEREFORE, I pray for the enforcement of my statutory protected rights pursuant to the Rehabilitation Act of 1973, codified as 29 U.S.C. § 701 et seq. and because of the fraud, I pray for $17,888, to include treble damages times three $53,664, with $17,888 to be refunded to the Department of Social Services that was paid to Independent Living.

Leaving $53,776, to be awarded to me in compensatory damages. For the fraud that the defendant Orange County Social Services committed in transferring funds to Independent Living in my name, I pray for the $17,888, to be returned to me and a waiver of repayment in the event that I settle a claim or receive a judgement. Since the HARP or HCBS program approved me for $16,000. two years in a row, I also pray for $32,000, time three $96,000, for treble damages since the denial of the program is both discriminatory based on the HARP policy and the Rehabilitation Act of 1973, codified as 29 U.S.C. § 701 et seq.  and whatever else the court may dem just and proper.

Regina Lewis
21 Kenney Ct.
Newburgh NY 12550

November 8, 2019

Case 1:19-cv-10665-CMA   Document 2   Filed 11/15/19   Page 10 of 21

*A*

# INDEPENDENT
# LIVING INC.

www.myindependentliving.org

*Serving people with disabilities in the Mid-Hudson Region since 1987*

October 29, 2019

Regina Lewis
22 Kenney Court #22
Newburgh, New York 12550

**RE:**        **Discharge from Program/Termination of Rental Subsidy**
               **Sent Certified Return Receipt and Regular Mail**

Dear Ms. Lewis:

On behalf of the Independent Living, Inc. Supported Housing Program we will be discharging you from our program as of December 15, 2019.  As per our conversation, and at your request, we will be resubmitting your SPOA Application immediately to the Orange County Department of Mental Health Services.

There have been numerous discussions with the case management staff and myself regarding your continuous barrage of discriminatory and vulgar messages left on our phones and our voicemails.  You have reiterated your lack of faith for the staff of this agency, your lack of faith in working with us, and you do not believe that we have the ability to suit your needs. We believe your physical and mental wellbeing are of paramount importance, therefore; we agree that discontinuing our services and allowing you to find assistance with an agency that is better suited to meet your needs are the best course of action.

In addition, as per our conversation via telephone on November 4, 2019, you have expressed that you no longer desire to continue to live in Newburgh and want to be housed in another county.  You believe that being out of county would allow you the opportunity to expand your horizons and allot you opportunities that Orange County has not been able to meet. Independent Living, Inc. Supported Housing Program will continue to provide your subsidy through December 31, 2019 in an effort to provide enough time for a transfer to an agency that will better suit your needs.

---

5 Washington Terrace, Newburgh, NY 12550
Phone: 845-565-1162 • Fax: 845-565-0567 • Videophone: 845-764-8384

441 E. Main Street, Middletown, NY 10940          14 Pelton St., East Wing, Monticello, NY 12701
Phone: 845-342-1162 • Fax: 845-342-1192          Phone: 845-794-3322 • Fax: 845-794-3323

Page 2

We wish you the best of luck in your future endeavors. Should you have any questions or concerns, enclosed you will find a copy of Independent Livings, Inc. Grievance Procedures. You are advised that you may contact MHLS at: 170 Old Country Road Suite 500 Mineola, NY 11501 516-493-3976
And/or OMH Field Office at: 10 Ross Circle suite 5N Poughkeepsie, NY 12601 845-454-8229

Sincerely,

Valentina DiTomasso
Program Manager for Housing and Homeless Services


cc:  Shannon Zawiski, Chief Operating Officer
     Orange County Department of Mental Health, SPOA Coordination
     Gladys White, Property Manager Bourne and Kenney Redevelopment, LLC
     Yedda Parker, DFA Department of Social Services

$\mathcal{B}$

# INDEPENDENT LIVING, INC.
5 Washington Terrace
Newburgh, NY 12550

In keeping with the Independent Living Center philosophy, Independent Living, Inc. (ILI) promotes consumer choice and direction as well as human and civil rights. As a consumer of our services, we are providing you with a Rights and Responsibilities document, as well as our formal Grievance Procedure. Independent Living, Inc. employees attempt to provide quality services and advocacy aimed at empowering every consumer.

## Consumer's Rights and Responsibilities

1. You have the right to be treated with dignity, respect and integrity.

2. You have the right to be treated in a courteous and friendly manner.

3. You have the right to have your information kept confidential based on the HIPAA Regulations, Notice of Privacy Practices, and rules of confidentiality.

4. You have the right to have your information shared with another person, agency or organization *ONLY* when your written permission has been provided in the form of a current signed Individual Authorization (Consent for the Release of Information) and/or based on the informed consent as stated in our Notice of Privacy Practices.

5. You have the right to receive accurate and easy to understand information...and in another language or format, if needed (American Sign Language (ASL), Spanish, large print, etc.).

6. You have the right to have your request for services, at Independent Living, Inc., be addressed by a staff member within five (5) business days from receipt of the request.

7. You have the right to initiate a consumer grievance procedure if you feel any action, occurrence or attitude is unfair or inequitable in the delivery of services. Please refer to the Consumer Grievance Procedure and Form for specific information.

As a consumer of Independent Living, Inc., you also have certain responsibilities. They include:

1. You have the responsibility to treat Independent Living, Inc. staff in a courteous and friendly manner.

2. You have the responsibility to avoid the use of foul and obscene language.

3. You have the responsibility to keep and arrive on time for scheduled appointments.

4. You have the responsibility to inform Independent Living, Inc. ahead of time when you are unable to keep a scheduled appointment.

5. You have the responsibility to report wrongdoing or fraud to the appropriate authorities.

6. You have the responsibility to provide staff with accurate and honest information which is necessary to provide you with the services you are requesting.

Independent Living, Inc (ILI)
# Consumer Grievance Procedure

In keeping with the Independent Living Center philosophy, which promotes consumer choice and direction, as well as human and civil rights, Independent Living, Inc. provides a formal Grievance Procedure for all consumers. Independent Living, Inc.'s employees attempt to provide quality services and advocacy aimed at empowering the consumer. However, if you are dissatisfied with your experience at Independent Living, Inc. you are entitled to use the following procedures:

The two avenues for resolving a consumer grievance are:

**Internal Review** – Consumer may contact appropriate staff by calling (845) 565-1162

1. The consumer may discuss the complaint with the service provider/employee. If the problem is not resolved to his/her satisfaction; then
2. The consumer should request from Independent Living staff, and complete, the consumer grievance complaint form and submit to the appropriate supervisor or Director. The employee's supervisor or Director will respond to the consumer within five (5) working days.
3. If the individual is not satisfied with the decision at the first level, he/she may present the complaint to the executive director (in writing) and expect response within five (5) days from the date it was presented to the executive director.
4. If the complainant is not satisfied with the decision of the executive director, he/she may submit a copy of the complaint to Independent Living, Inc. Board of Directors within thirty (30) days of receiving the Executive Directors' decision. Within forty-five (45) days the Board of Directors will have conducted a meeting, from which it has gathered enough information on which to base its decision. Once able to reach a majority decision, it will do so in writing to the complainant. This decision is final.

The consumer may initiate an External Review if desired:

**External Review** – Consumer may contact:

**New York State Client Assistance Program**:
Disability Advocates, Inc.
5 Clinton Square, 3rd Floor
Albany, NY 12207
mail@disabilityadvocates.org
Phone: (518) 432-7861 (voice/TTY)
1-800-993-8982 (voice/TTY)

**NYSED ACCES-VR Administration Unit**
89 Washington Avenue
EBA 5th Floor
Albany, New York 12234
Phone: (518) 474-2925 or 1-800-222-5627 (voice/TTY)

***<u>PLEASE SIGN AND RETURN ONE COPY WITH COMPLETED INTAKE FORM</u>***

As a consumer of Independent Living, Inc., I have been informed and I'm aware of ILI's HIPAA Notice of Privacy Practices and consent for ILI to use and disclose my information for treatment, payment and healthcare operations. I have also been given a copy of my Rights and Responsibilities, as well as the Consumer Grievance Procedure.

_____
PRINTED CONSUMER NAME

_____                    _____
CONSUMER SIGNATURE                                               DATE



# INDEPENDENT LIVING INC.

www. ................ .org

*Serving people with disabilities in the Mid-Hudson Region since 1987*

July 25, 2018

Bourne & Kenney Apartments
150 Smith Street
Newburgh, NY 12550

To Whom It May Concern:

This letter is to serve as verification/notice that Regina Lewis is a participant in the Office Of Mental Health Supported Housing Program of independent Living, Inc.

As a participant in the program, Independent Living, Inc. will be responsible for paying the full amount of the rent totaling $997.00 on a monthly basis until Regina secures her own benefits. We will also provide the amount of $775.00 for the required security deposit.  She will also be receiving weekly home visits from a case manager for support services.

Once Regina secures benefits, we will calculate her portion of the rent which should be 30% of her income and we will pay the remainder of the rent total.  We will forward you notice of this once we have the information.

Thank you for your time and cooperation in this matter.


Valentina DiTomasso
Program Manager for Housing and Homeless Services

Regina Lewis
21 Kenney Ct.
Newburgh NY 12550

PRO SE
INTAKE
GP

U.S. District Court
500 Pearl St.
New York NY 10007

1000731916 C014